## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| NATALIA MUSIAL, individually and on behalf of all others similarly situated, | Case No. 1:17-cv-7182 |
| *Plaintiff,* | |
| v. | |
| APPCARD, Inc., a Delaware corporation, | |
| *Defendant.* | |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Natalia Musial ("Musial" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant AppCard, Inc. ("AppCard" or "Defendant") to stop its practice of sending unsolicited text messages to the cellular telephones of consumers nationwide and to obtain redress for all persons injured by its conduct. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1.      Defendant AppCard is a data mining company that caters to the retail, grocery, and restaurant industries. By using AppCard, according to its marketing materials, merchants in these industries can "get one step ahead" of their customers by closely monitoring their buying behavior and habits.

2.      For this to work, however, AppCard's merchant-clients must first enroll their customers into its special "customer loyalty program," so that AppCard can record their purchasing histories and analyze the data to make predictions about their future behavior.

3.      AppCard made it easy for its merchant-clients to enroll customers into the AppCard customer loyalty program.  All that they need to do is enter each customer's cell phone

1

number into a computer screen that AppCard incorporates into their checkout process. No agreements of any kind are ever presented to or signed by the customer before they are enrolled into AppCard's loyalty program.

4.      Unbeknownst to the customers (and probably to the merchant-clients as well), AppCard greets all new customer loyalty program enrollees with a barrage of promotional text messages that encourage them to download its mobile application (the "AppCard App").

5.      However, AppCard never obtained prior written express consent from these customers to receive autodialed calls of any kind from AppCard, let alone text messages ads.

6.      Because Defendant AppCard made unauthorized text message calls to consumers' cellular telephones without prior express consent, it violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

7.      Plaintiff, individually and on behalf of all others similarly situated, seeks an injunction requiring AppCard to cease sending unsolicited text messages, as well as an award of statutory damages as provided under the TCPA, actual damages, costs, and attorneys' fees.

## PARTIES

8.      Plaintiff Natalia Musial is a natural person and a citizen of the State of Illinois.

9.      Defendant AppCard, Inc., is a Delaware corporation with its principal place of business located at 90 John Street, 6th Floor, New York, New York 10038.

## JURISDICTION AND VENUE

10.     The Court subject matter jurisdiction under 28 U.S.C. § 1331 over Plaintiff's claim arising under the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227, a federal statute. The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state

than the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and

costs, and (iii) none of the exceptions under that subsection apply to this action.

11.     This Court has personal jurisdiction over Defendant because it conducts business

in Illinois and throughout this District.

12.     Venue is proper under 28 U.S.C. § 1391(b) because Defendant regularly conducts

business in this District.

<strong>COMMON FACTUAL ALLEGATIONS</strong>

13.     Defendant AppCard is a "personalized marketing and loyalty platform" that "uses

smart data capture and artificial intelligence to change the way retailers communicate with their

customers." AppCard integrates its software with its merchant-clients' POS terminals so that

they may seamlessly enroll their customers into its loyalty program.

14.     To enroll customers into its loyalty program, merchant-clients need only enter—

or, depending on the merchant's POS system, have its customers enter—their cell phone

numbers into the enrollment screen that AppCard displays during the merchant-client's POS

checkout process. *See* Figure 1.



(**Figure 1,** showing the AppCard enrollment screen with the phone number redacted.)

15.     AppCard stores every customers' cell phone number—that is entered into its merchant-client's POS terminal—in its database together with the receipt of their purchase, thus creating a comprehensive history of the customer's purchasing habits.

16.     Once that happens, AppCard automatically begins sending the newly enrolled customer a barrage of promotional text messages urging them to download the AppCard App (the "Promotional Text Messages"). *See* Figure 2.



(**Figure 2,** showing the text messages sent by AppCard to Plaintiff's cell phone.)

17.     Each Promotional Text Message sent by AppCard was substantially similar in that they all contained a hyperlink to AppCard's website where it encouraged the recipient to download the AppCard App. *See* Figure 3.



(**Figure 3**, showing AppCard's website where it encourages the Promotional Text Message recipient to download the AppCard App.)

18.     AppCard sends these Promotional Text Messages continuously to Plaintiff and the Class (*i.e.,* customers of AppCard's merchant-clients) in the hopes that they would install the AppCard App on to their mobile device, thus providing AppCard with complete visibility into their purchasing habits, behaviors, and daily lives more generally. In other words, the only way to get these Promotional Text Messages to stop is to download the AppCard App.

19.     AppCard never informed customers that it would send Promotional Text Messages to their cell phones for any purpose or reason whatsoever. Likewise, AppCard never obtained prior express written consent from customers before sending the Promotional Text Messages at issue.

## FACTS SPECIFIC TO PLAINTIFF MUSIAL

20.     On or around September 2017, Plaintiff Musial visited Daily Projects Coffee Bar—one of AppCard's merchant-clients—and voluntarily enrolled into AppCard's loyalty program by input her cell phone number into a screen displayed to her at checkout. *See* Figure 1, above.

21.     Musial was never provided with any terms or conditions before enrolling in AppCard's loyalty program, and was never notified that inputting her phone number into the enrollment screen would result in Promotional Text Messages being sent to her cell phone.

22.     Nevertheless, soon after Musial enrolled in AppCard's loyalty program, AppCard sent her a barrage of Promotional Text Messages from short-code 875-73 (a shortened five-digit telephone number operated by AppCard), each of which encouraged her to download the AppCard App. *See* Figures 2 and 3, above.

23.     Musial never gave her express written consent to AppCard prior to receiving the Promotional Text Messages at issue, and in fact, was never presented with—and never agreed to—any terms of any kind.

24.     In light of AppCard's invasive and harassing promotional text message campaign, Musial did not download the AppCard App.

## CLASS ALLEGATIONS

25.     **Class Definition:** Plaintiff Natalia Musial brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of herself and a Class of similarly situated individuals, defined as follow:

All persons in the United States who received one or more Promotional Text Messages. Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members

of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

26.     **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Class members can be identified through Defendant's records.

27.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the putative Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a.      Whether Defendant's conduct violated the TCPA;

b.      Whether Defendant sent text messages using an automatic telephone dialing system ("ATDS"), as contemplated by the TCPA;

c.      Whether Plaintiff and Class members gave Defendant prior express written consent to receive such text message calls; and

d.      Whether Plaintiff and Class members are entitled to treble damages based on the willfulness of Defendant's conduct.

28.     **Typicality:** Plaintiff's claims are typical of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendant's uniform wrongful conduct.

29. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

30. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Plaintiff and the members of the Class have suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

31. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management

difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

### FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Class)

32.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

33.     Defendant, without having prior express written consent, sent Promotional Text Messages to Plaintiff and other Class members.

34.     Defendant sent these text messages to the cell phone numbers of Plaintiff and the Class using equipment that had the capacity to store or produce telephone number to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers *en masse.*

35.     By sending text messages to cell phone numbers with an automated telephone dialing system and without prior express written consent, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

36.     As a result of Defendant's unlawful conduct, Plaintiff and the putative Class members suffered actual damages and have also had their rights to privacy adversely impacted. Plaintiff and the Class are therefore entitled, among other things, a minimum of $500 in statutory damages for each such violation under 47 U.S.C. § 227(b)(3)(B).

37.     To the extent Defendant's unlawful conduct is determined to be willful, the Court pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by the Plaintiff and putative Class members.

38.     Additionally, Plaintiff and the putative Class member are entitled to an injunction

under 47 U.S.C. § 227(b)(3)(A), to ensure Defendant's violations of the TCPA do not continue into the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Natalia Musial, individually and on behalf of the Class prays for the following relief:

a.     An order certifying the Class as defined above, appointing Plaintiff Natalia Musial as the representative of the Class, and appointing her counsel as Class Counsel;

b.     An order declaring that Defendant's actions, as set out above, violate the TCPA;

c.     An award of actual, statutory, and treble damages;

d.     An injunction requiring Defendant to cease all unlawful text message activities and enjoining Defendant from using automated or computerized dialing equipment to place text message calls without consent;

e.     An award of reasonable attorneys' fees and costs; and

f.     Such other and further relief that the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

**NATALIA MUSIAL,** individually and on behalf of all others similarly situated,

Dated: October 4, 2017

By:   <u>/s/ Ari J. Scharg</u>
           One of Plaintiff's Attorneys

Benjamin H. Richman
brichman@edelson.com
Ari J. Scharg
ascharg@edelson.com
Sydney Janzen
sjanzen@edelson.com

EDELSON PC
350 North LaSalle, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff and the Class*